IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GABRIEL SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00691-O-BP |
| | § | |
| HERTZ CAR SALES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is *pro se* Plaintiff Gabriel Sanchez's Motion to Remand (ECF No. 12) and Defendants' Motions to Compel Arbitration (ECF Nos. 16, 20-21), with their Brief in Support (ECF No. 17). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Plaintiff's Motion to Remand, **GRANT** Defendants' Motions to Compel Arbitration, **DENY** all remaining pending motions as **moot**, and **DISMISS** this case **with prejudice**.

**I.    BACKGROUND**

Gabriel Sanchez sues three Defendants relating to the repossession of his 2017 Nissan Sentra. *See* ECF No. 7. Sanchez purchased the vehicle from Defendant Hertz Car Sales ("Hertz") under a retail installment contract (the "Contract"). *Id.* at 6. Hertz assigned its Contract rights to Defendant American Credit Acceptance, LLC ("ACA"), which had financed Sanchez's purchase. *See id.*; ECF No. 17-1 at 4, ¶ 6. Under the Contract, Sanchez agreed to make monthly installment payments, and he "entered the vehicle as collateral." ECF No. 7 at 6-7. ACA says Sanchez "fell behind on his monthly payments," so it directed Defendant Hide and Seek Recovery ("H&S") to

repossess the vehicle. ECF No. 17-1 at 5, ¶ 8. According to Sanchez, H&S "illegally repossessed" the vehicle." ECF No. 7 at 2.

Sanchez sued Defendants in the 348th Judicial District Court of Tarrant County, Texas. ECF No. 1-1 at 5-10. His state court original petition asserted claims under Texas civil and criminal statutes and the federal Fair Debt Collection Practices Act ("FDCPA"). *Id.* at 9. When Defendants did not file an answer or responsive pleading, Sanchez filed a motion for default judgment. *Id.* at 3, 36-37. Two days later, ACA removed the case to this Court based on Sanchez's FDCPA claim, with Hertz and H&S consenting to the removal. ECF No. 1 at 1-2, 4.

Sanchez moves the Court to remand (ECF No. 12), while Defendants oppose (ECF Nos. 27-29) and move the Court to compel arbitration and dismiss this case under the Contract and the Federal Arbitration Act ("FAA"). ECF Nos. 16, 20-21.

## II.    LEGAL STANDARDS

### A.    Removal and Remand

A defendant to a civil action filed in state court may remove the action to federal court if it could have been filed there originally. 28 U.S.C. § 1441(a). Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The case arises under U.S. law if "federal law creates the cause of action." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The plaintiff may object to removal and move to remand the case under 28 U.S.C. § 1447(c). It is the removing party's burden to show that federal jurisdiction, and thus removal, is proper. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009).

Whether federal jurisdiction is proper depends upon "the claims in the state court petition as they existed at the time of removal." *Clewis v. Medco Health Sols., Inc.*, 578 F. App'x 469, 471

(5th Cir. 2014) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). Any doubts are resolved against federal jurisdiction. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Upon removal, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

  **B.**  **Federal Arbitration Act**

  Where applicable, the FAA "requires courts to enforce private arbitration agreements." *New Prime Inc. v. Oliveira*, ___ U.S. ___, 139 S. Ct. 532, 536 (2019). The Court should grant a motion to compel arbitration under the FAA if "the parties agreed to arbitrate the dispute in question" and no "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citing and quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 628 (1985)). If the parties do not raise any external legal constraints, the inquiry narrows to whether the parties agreed to arbitrate the dispute, which involves two considerations: (1) whether the parties have a valid arbitration agreement, and (2) whether the dispute falls within the agreement's scope. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb*, 89 F.3d at 258).

  The Court may consider "the pleadings and evidence on file." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 444 (N.D. Tex. 2019) (treating motion to compel arbitration like motion for summary judgment). It is the moving parties' burden to "prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012); *see also Amerigas USA, LLC v. Standard Cap. SA, Inc.*, No. 3:21-cv-0072-B, 2021 WL 5052658, at *2 (N.D. Tex. Nov. 1, 2021) (citing *Grant*, 469 F. App'x at 315). The movants must proffer "competent evidence showing the formation of an agreement to arbitrate."

3

*Gallagher v. Vokey*, 860 F. App'x 354, 357-58 (5th Cir. 2021). The burden then "shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope." *Grant*, 469 F. App'x at 315.

If the Court concludes that whether the parties agreed to arbitrate their dispute is "in issue," then the Court should "proceed summarily to the trial thereof." *Gallagher,* 860 F. App'x at 357 (quoting 9 U.S.C. § 4). If the Court concludes it is not in issue, then the FAA authorizes the Court to compel arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. § 4). The Court bears in mind that "[t]he FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

### III.   ANALYSIS

#### A.   **Defendants properly removed this case from state to federal court.**

Removal is proper if, at the time of removal, the state court petition asserts a claim arising under federal law. *Compare Clewis*, 578 F. App'x at 471 (removal was proper because "[w]hen the case was removed to federal court, [Plaintiff's] state court petition contained a federal claim for violation of the Americans with Disabilities Act"), *with Dupree v. PennyMac Loan Servs., LLC*, No. 3:16-cv-0632-N-BK, 2016 WL 5875016, at *3 (N.D. Tex. Sept. 2, 2016), *rec. adopted*, 2016 WL 5870961 (N.D. Tex. Oct. 7, 2016) (remand was proper when "Defendant concede[d] that the original petition alleged no federal claims").

At the time Defendants removed this case, Sanchez's state court petition asserted a claim arising under federal law: "[T]here are penalties available under the Federal Fair Debt Collection Practices Act [of] $1,000 for each violation." ECF No. 1-1 at 8. The prayer for relief requested $2,000 in damages under the FDCPA. *Id.* at 9. The FDCPA is a federal law, *see* 15 U.S.C. §§ 1692-

1692p, which creates a cause of action against its violators. *See* § 1692k ("Civil Liability"). Sanchez's claim for relief under the FDCPA triggers this Court's jurisdiction under 28 U.S.C. § 1331, such that Defendants could remove Sanchez's state court civil action under 28 U.S.C. § 1441(a).

The case remains removable even though Sanchez filed a post-removal motion to amend his pleadings by withdrawing the FDCPA claim. ECF No. 11. In that motion, which he filed the same day as his Motion to Remand, Sanchez says he "wasn't aware of the issue with the Federal Claim until the Defendants filed a notice of removal." *Id.* at 3. Even so, "a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985). The Court's review remains confined to the claims asserted in the state court petition upon removal. *Clewis*, 578 F. App'x at 471. To the extent the purpose of the motion to amend is to defeat removal, the motion is unavailing and should be denied.

Sanchez also challenges removal in light of his state court motion for default judgment: "[I] question the timing of ACA Attorney, Hertz Car Sales Attorney and Hide and Seek Recovery Attorney to deprive the state court subject matter jurisdiction shortly after the Plaintiff filed a motion for default judgment." ECF No. 33 at 2. A pending state court motion for default judgment does not defeat removal. *Burch v. JPMorgan Chase Bank, N.A.*, No. 3:19-cv-0645-N-BH, 2019 WL 4919018, at *3 (N.D. Tex. Sept. 3, 2019), *rec. adopted*, 2019 WL 4918100 (N.D. Tex. Oct. 4, 2019). To the extent Plaintiff challenges the timeliness of removal, Defendants carry their burden in showing they timely filed their notice of removal. *See generally id.* at *2 (construing similar fact scenario as a challenge to removal timeliness). Defendants had thirty days to remove this case from the date they received service of process of the state court case. *Murphy Bros. v. Michetti*

*Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (discussing 28 U.S.C. § 1446(b)). Sanchez claims ACA and Hertz received service of process on May 1; H&S, on May 5. ECF No. 12 at 1-2. At the earliest, the removal period would have run thirty days later, May 31. Defendants' notice of removal filed on May 27 is thus timely. ECF No. 1.

Defendants further show compliance with the removal procedural requirements. ACA filed a notice of removal in this Court. *Id.*; *see* 28 U.S.C. § 1446(a). Hertz and H&S consented to the removal. ECF No. 1-1 at 50, 52; *see* 28 U.S.C. § 1446(b)(2)(A). Defendants filed with their notice of removal the following: a completed civil cover sheet, a supplemental cover sheet, an index of documents, a copy of the state court docket sheet, copies of every document filed in the state court, and a separately signed certificate of interested persons. *See* ECF Nos. 1-1 to 1-3, 2; Loc. Civ. R. 81(a).

Because there is no doubt that Defendants' removal complies with federal law, the Federal Rules of Civil Procedure, and the Court's Local Rules, the undersigned finds that Defendants properly removed the case to this Court.

**B.      The Court should grant Defendants' Motions to Compel Arbitration.**

**1.      The FAA applies to the Contract.**

The FAA only applies when there is a "written provision" within "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2; *see also New Prime Inc.*, ___ U.S. at ___, 139 S. Ct. at 537-38. The transaction must "in fact 'involv[e]' interstate commerce." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) (alteration in original). The phrase "involving commerce" reaches broadly and "signals an intent to exercise Congress' commerce power to the full." *Id.* at 277; *see also* 9 U.S.C. § 1 (definition of "commerce"). Sanchez does not dispute that the FAA

applies to the Contract, which is written and contains an arbitration provision invoking the FAA. *See* ECF No. 17-1 at 7-12.

The Contract evidences a transaction that in-fact involves interstate commerce because it reflects Sanchez purchasing a car on credit from Defendant ACA. *See* ECF Nos. 17-1 at 4, ¶ 4; 7 at 6. Under the FAA, consumer credit transactions like Sanchez's are "imbu[ed] . . . with the necessary interstate character." *Bilbo v. Toyota Motor Credit Corp.*, No. 2:08-cv-173KS-MTP, 2008 WL 4793804, at *2 (S.D. Miss. Nov. 3, 2008); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) (considering whether Congress could regulate the "general practice" of the transactions at issue). Sanchez also made Contract payments across state lines to ACA, a South Carolina company. ECF No. 17-1 at 3, 5, ¶¶ 1, 7. Such interstate activity triggers the FAA. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967) (analyzing transaction's interstate nature).

Consequently, the undersigned finds the FAA applies to the Contract. Because the parties do not raise any external legal constraints that would foreclose arbitrating the claims at issue, the Court's inquiry under the FAA narrows to whether the parties agreed to arbitrate the dispute in question. *See Tittle*, 463 F.3d at 418.

### 2. The parties agreed to arbitrate the dispute in question.

#### a. There is a valid arbitration agreement.

Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the Court applies state law contract principles in determining whether there is a valid arbitration agreement. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Because an arbitration agreement's validity "is a matter of contract," the moving party must show the agreement "meets

all of the requisite contract elements." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688-89 (5th Cir. 2018).

The parties do not dispute that Texas law applies, noting the Contract states that "Federal and Texas law apply." ECF No. 17-1 at 7. In Texas, "a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (citing *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)). "Texas courts have consistently held that 'a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms.'" *Gallagher*, 860 F. App'x at 358 (quoting *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 666 (Tex. App.—Dallas 2012, pet. denied)).

Attached to ACA's Motion to Compel as Exhibit 1 is a copy of the six-page Contract (ECF No. 17-1 at 7-12), which contains the arbitration agreement:

> Any claim or dispute . . . between you and us . . . , which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election be resolved by neutral, binding arbitration and not by a court action.

*Id.* at 12. ACA authenticates the Contract via the declaration of Karen Adams, ACA's Manager of Operations Support and Analytics. *See id.* at 3, ¶ 2; *Everest Indem. Ins. Co. v. Allied Int'l Emergency LLC*, No. 4:08-cv-678-Y, 2009 WL 2030421, at *2 (N.D. Tex. July 14, 2009) (contracts must be authenticated under Fed. R. Evid. 901). Adams claims personal knowledge of the Contract through her employment with ACA. ECF No. 17-1 at 3, ¶ 2; *see* Fed. R. Evid. 602 ("Need for Personal Knowledge"). She declares under penalty of perjury that a "copy of the [C]ontract is Exhibit 1" and "Sanchez signed the [C]ontract with [Hertz], under which he obtained financing from ACA." ECF No. 17-1 at 4, ¶ 4; *see also Everest Indem. Ins. Co.*, 2009 WL 2030421, at *2 (Court may consider a sworn-to copy of a contract). The Contract is not hearsay

8

because its statements possess legal significance independent of their truth. *Everest Indem. Ins. Co.*, 2009 WL 2030421, at *2. Noting no objection from Sanchez, the undersigned may consider the Contract as admissible evidence of a valid arbitration agreement. And because it is written, the Contract is "prima facie valid" under the FAA. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004).

The Contract also evidences the elements needed to support a valid contract in Texas. Under its terms, Hertz offered Sanchez the vehicle in exchange for a $500 down payment plus 72 monthly installments of $335.17 each, totaling $24,632.24. ECF No. 17-1 at 7-8. The Contract contains Sanchez's and Hertz's signatures, with Sanchez's appearing underneath the following provision: "**YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT.**" *Id.* at 11. His signature also appears separately underneath the following "Agreement to Arbitrate" provision: "By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this [C]ontract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action." *Id.* at 8. The apparent signatures and acknowledgement of receipt are evidence of mutual assent. *See Gallagher*, 860 F. App'x at 358. Defendants carry their burden in proffering competent evidence of the arbitration agreement's validity under Texas law.

The burden now shifts to Sanchez to put the matter in issue. *Grant*, 469 F. App'x at 315; *Gallagher*, 860 F. App'x at 357-58. He must "'unequivocal[ly] den[y]' that he agreed to arbitrate and produce 'some evidence' supporting his position." *Gallagher*, 860 F. App'x at 357 (alterations in original) (quoting *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363-64 (5th Cir. 2015)). He may rely on "generally applicable contract defenses, such as fraud, duress, or unconscionability"

to invalidate the arbitration agreement. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Sanchez claims he "challenge[s] the validity of the Arbitration clause." ECF No. 30 at 2, 5. Citing an Alabama Supreme Court case, he asserts "[t]he arbitration clause in the parties' agreement prohibited the arbitrator from awarding punitive damages," rendering it void. *Id.* But the arbitration agreement here does not preclude punitive damages, s*ee* ECF No. 17-1 at 12, and the Alabama case is otherwise inapplicable because it applies Alabama contract law instead of Texas law. *See Cavalier Mfg. v. Jackson*, 823 So. 2d 1237 (Ala. 2001), *overruled in part by Ex parte Thicklin*, 824 So. 2d 723, 730 (Ala. 2002).

Sanchez also maintains that Defendants committed "Trespassing" and "violate[d] state statutes." ECF No. 30 at 2, 5. But in ruling on Defendants' Motion to Compel Arbitration, the Court "is not to rule on the potential merits of the [Plaintiff's] underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Court only determines whether the parties agreed to arbitrate the dispute in question.

Because Defendants proffer competent evidence of a valid arbitration agreement and Sanchez does not unequivocally deny he agreed to arbitrate or proffer any evidence supporting that position, the undersigned finds the agreement's validity is not in issue such that the Court may compel arbitration if this dispute falls within the agreement's scope.

### b.     This dispute falls within the agreement's scope.

The undersigned presumes the dispute falls within the agreement's scope "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Broadly worded arbitration

clauses fortify the presumption, which may be overcome by an "express provision excluding [the] particular grievance from arbitration" or by "only the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.*

Sanchez agreed to a broadly worded arbitration clause that covers "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . , which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship." ECF No. 17-1 at 12. The phrases "any claim or dispute" and "arises out of or relates to" collectively trigger a broad interpretation. *See Brandom v. Gulf Coast Bank & Tr. Co.*, 253 F.3d 706 (5th Cir. 2001). Broad arbitration clauses "embrace all disputes between the parties having a *significant relationship* to the contract regardless of the label attached to the dispute." *Id.* (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

This dispute has a significant relationship to the Contract because it concerns the vehicle Sanchez acquired under the Contract. Sanchez says he "entered the vehicle as collateral" and made monthly payments under the Contract. ECF No. 7 at 6-7. He claims Defendant H&S "illegally repossessed" and wrongfully withheld the vehicle. *Id.* at 2, 4. ACA, which hired H&S, "had [Sanchez's] car repossessed" because he "fell behind on his monthly payments" under the Contract. ECF No. 17-1 at 5, ¶ 8. The Contract expressly contemplates scenarios involving "Default," "Repossession," and the "Right to Redeem." *See* ECF No. 17-1 at 10-11. The undersigned strongly presumes this dispute has a significant relationship to the Contract and is otherwise susceptible to an interpretation that falls within the arbitration agreement's scope.

It is Sanchez's burden to overcome the presumption. *See Grant*, 469 F. App'x at 315. He does not do so, though. The arbitration provision does not expressly exclude any dispute from arbitration. *see* ECF No. 17-1 at 12. Sanchez also does not proffer any evidence showing this

11

dispute should be excluded, and the Court is not aware of any such evidence either. *See* ECF No. 30; *AT&T Techs., Inc.*, 475 U.S. at 650. The undersigned thus finds that this dispute falls within the arbitration agreement's scope. The only remaining question is who may enforce the agreement against Sanchez.

### 3. All three Defendants may compel arbitration.

Generally, only a contract's signatories may invoke its arbitration clause, with non-signatories doing so "only in rare circumstances." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). The Contract shows Hertz's and Sanchez's signatures, but not ACA's or H&S's. ECF No. 17-1 at 11. Sanchez does not dispute that all three Defendants may compel arbitration. Even so, the undersigned finds that they may.

Hertz and ACA may compel arbitration as Contract signatory and assignee, respectively. In Texas, an assignee stands in the assignor's shoes and may assert its rights. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000). The Contract authorizes assignment, *see* ECF No. 17-1 at 10, and Hertz "assigned all its rights, title and interest in the [C]ontract to ACA." *Id.* at 4, ¶ 6; *see* Grant, 469 F. App'x at 315 (uncontroverted declaration evidences an assignment). Just as Hertz may compel arbitration as a signatory, so too can ACA as Hertz's assignee.

The Court may exercise its discretion in permitting H&S, a third-party non-signatory, to compel arbitration under the doctrine of equitable estoppel. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). Federal law, not state law, governs the doctrine's application. *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004). A non-signatory may compel arbitration against a signatory under the doctrine when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the

nonsignatory and one or more signatories to the contract." *Grigson*, 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

The Court compares the complaint with the contract to determine whether the plaintiff's claims are "so intertwined with and dependent upon" the contract that equity supports the non-signatory defendant invoking the contract's arbitration agreement against the signatory plaintiff. *See Grigson*, 210 F.3d at 528-29; *see also Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002). Applying equitable estoppel "makes sense" when the party opposing arbitration "had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003). "Each case, of course, turns on its facts." *Grigson*, 210 F.3d at 527.

Sanchez alleges interdependent and concerted misconduct by H&S and the other Defendants. The Contract authorizes Hertz and ACA to "peacefully" repossess Sanchez's vehicle as collateral if he defaults and entitles Sanchez to redeem the vehicle if it is repossessed. ECF No. 17-1 at 10-11. Sanchez's Complaint alleges ACA and Hertz "hired" H&S, which acted "on their behalf" in "illegally repossess[ing] the vehicle." *See* ECF No. 7 at 2-3. Sanchez allegedly paid a $1,644.97 redemption amount to ACA, which told him to contact H&S to set up an appointment to pick up his vehicle. ECF No. 7 at 4. But H&S would not release the vehicle unless he paid an additional $250 storage fee. *Id.* When Sanchez objected, H&S told him to contact ACA. *Id.* Sanchez did so, but "nothing was resolve[d]." *Id.*

In asserting his causes of action, Sanchez does not invoke the Contract's provision for "peaceful" repossession or its provision for redemption. *See* ECF No. 7. But he claims, for example, that all three Defendants are liable for "breach of peace" under the Texas Business and Commerce Code and, as it relates to his attempt to redeem the vehicle from H&S, that Defendants

ACA and Hertz violated the Texas Deceptive Trade Practices-Consumer Protection Act. ECF No. 7 at 1, 4, 8. The undersigned finds Sanchez's claims against H&S are so intertwined with and dependent upon the Contract that he should be equitably estopped from resisting H&S's motion to compel arbitration. *See Grigson*, 210 F.3d at 528-29.

And this makes sense because Sanchez expressly agreed to arbitrate these types of claims under the arbitration agreement, which contemplates "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to" the Contract "or any resulting transaction or relationship (including any such relationship with third parties who do not sign this [C]ontract)." ECF No. 17-1 at 12; *see Bridas*, 345 F.3d at 361. Bearing in mind the "strong national policy favoring arbitration of disputes" and the Court's duty to resolve all doubts of arbitrability in arbitration's favor, *Primerica Life Ins. Co.*, 304 F.3d at 471, the undersigned finds that all three Defendants, including non-signatories ACA and H&S, may compel arbitration.

## IV.   CONCLUSION

Defendants properly removed this case to federal court, where they show the parties agreed to arbitrate this dispute. The Court should thus compel arbitration.

Defendants further request the Court dismiss this case with prejudice. ECF No. 17 at 17. Although the FAA authorizes the Court to stay proceedings pending arbitration, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The dismissal may be made with prejudice. *See id.* As discussed above, the undersigned finds the dispute between Sanchez and Defendants falls within the arbitration agreement's scope.

Finding no other reason to retain jurisdiction over this matter, the undersigned recommends that the Court dismiss this case with prejudice.

Because the Court should compel arbitration and dismiss this case, the undersigned further recommends that the Court deny the remaining pending motions on file as moot. They include the following motions filed by Sanchez: Application to Proceed in District Court without Prepaying Fees or Costs (ECF No. 8); Motion to Second Amended Complaint (ECF No. 11, discussed and cited above), Motion to Deny the Defendants['] Motion to Compel Arbitration and Dismiss Proceedings (ECF No. 30, discussed and cited above); and Motion to Deny the Defendants['] Opposition to Motion to Remand (ECF No. 33, discussed and cited above). Sanchez's state court motion for default judgment also "remain[s] pending as if [it] had been filed in federal court." *Burch*, 2019 WL 4919018, at *3. But the Court should likewise deny it as moot. A default judgment is "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). And as discussed above, Defendants timely filed their notice of removal.

Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** Plaintiff's Motion to Remand (ECF No. 12), **GRANT** Defendants' Motions to Compel Arbitration (ECF Nos. 16, 20-21), **DENY** all remaining pending motions as **moot**, and **DISMISS** this case **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state

the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on December 6, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE